```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
HATEM BEHIRY,                                                :
                                       Petitioner,           :    21 Civ. 1779 (LGS)
                                                             :    16 Cr. 763 (LGS)
                    -against-                                :
                                                             :    OPINION AND ORDER
UNITED STATES OF AMERICA,                                    :
                                       Respondent.           :
------------------------------------------------------------ X
```

LORNA G. SCHOFIELD, District Judge:

      Petitioner Hatem Behiry brings this petition (the "Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Petitioner moves to vacate his conviction or set aside his sentence of twenty-four months due to alleged ineffective assistance of counsel. For the following reasons, the Petition is denied.

**I.     BACKGROUND**

      Petitioner was charged with participating in a six-year scheme to defraud the Medicare Program ("Medicare") and the New York State Medicaid Program ("Medicaid") via fraudulent billing for physical therapy, occupational therapy, and other medical services and supplies. On May 9, 2019, after a six-week jury trial, Petitioner was convicted of conspiracy to commit health care fraud, mail fraud and wire fraud; conspiracy to make false statements relating to health care matters; and health care fraud, mail fraud and wire fraud. On October 6, 2020, Petitioner was sentenced to twenty-four months' imprisonment on each count to run concurrently, followed by three years' supervised release.

      As relevant to the Petition, at trial, the Government presented evidence that Petitioner performed fraudulent "initial evaluations" to determine the physical therapy needs of individual patients, many of whom were "professional patients" who were aware of, or complicit in,

Petitioner's activity. Two translators who worked with Petitioner during initial patient evaluations - - Olga Kharuk and Anastasia Flora - - testified that typically Petitioner spent one to three minutes per patient, asking six to eight questions, but billed for much longer and substantive initial evaluations. The Government also introduced covert video recordings of two initial evaluation sessions with Boris Levin, an undercover witness. Those recordings showed Petitioner asking Levin six to eight questions. Each evaluation session lasted less than a minute, but Petitioner's corresponding billing documents claimed he performed thirty minutes of skilled physical therapy services. The Government introduced evidence that, when patients did not complain of pain, Petitioner would ask them which body part they wanted massaged and then bill those massages as physical therapy. The Government also introduced Petitioner's patient evaluation forms to corroborate the brief nature of his treatments: (1) no vital signs were checked, (2) patients neither described nor quantified their pain on a scale of one to ten, (3) pain levels captured on numerous forms were identical, (4) there was no mention of prior function levels or limitations and (5) patients complained about the same type of pain in different body parts at six week intervals, which maximized Medicare and Medicaid coverage.

      The Government also introduced evidence that Petitioner billed shorter patient visits as hourly physical therapy sessions. Four covert video recordings of Levin's visits showed that he (1) did not receive the services that Petitioner listed in billing documents and patient charts and (2) spent most of his time in the waiting area in order to create the impression to any onlookers outside that he was treated for one hour. Each frame of the video recordings contained a timestamp. To authenticate these recordings, the Government called FBI Special Agent Liam McElearney, who testified that: (1) he started and stopped the recording device, (2) he placed the recording device in a location that was difficult for others to access, (3) audio would still be

captured if the device was turned off, and (4) he saw no indication of any tampering with the device.  Petitioner's trial counsel cross-examined McElearney at length regarding the contents of the video recordings.  That cross-examination noted some discrepancies: (1) the internal clock on the video recorder did not match McElearney's recorded announcements of when he started and stopped recording and (2) copies of computer files containing the videos were shorter or longer than the elapsed times of the recordings measured by McElearney's watch -- a discrepancy McElearney attributed to conversion of the video files between different computer formats.

McElearney, with the help of a Russian interpreter, debriefed Levin upon his return from each visit to Petitioner's clinics and promptly recorded Levin's statements (the "Debriefing Statements").  On two occasions, Levin reported having used an upper body bicycle.  Testimony from witnesses who reviewed those videos stated that they did not observe Levin doing so.  Levin developed dementia, died before trial and was unavailable to testify.  Defense counsel sought to cross-examine informant Levin about Debriefing Statements wherein Levin reported performing exercises not shown in the videos, claiming they constituted admissions by a party opponent.  The Government moved to strike the statements.  The motion was granted under *United States v. Yildiz*, 355 F.3d 80, 81 (2d Cir. 2004), which prohibited the Government from being bound by an agent's inconsistent out-of-court statements.  During argument as to the admissibility of the Debriefing Statements, counsel for Petitioner's co-defendant requested that the statements be admitted under the residual exception of Federal Rule of Evidence 807.  Petitioner's trial counsel did not join that argument, which was rejected for lack of reasonable notice to the Government.

Petitioner's trial counsel refused to file a motion for a judgment of acquittal and a new trial.  Petitioner replaced him.  On January 12, 2022, the Second Circuit affirmed Petitioner's

conviction and judgment and held that the Debriefing Statements had been properly excluded at trial. *United States v. Behiry*, No. 20 Crim. 3697, 2021 WL 6061988, at *2 (2d Cir. Dec. 20, 2021). Petitioner filed the present Petition through counsel, claiming that his trial counsel had rendered ineffective assistance.

## LEGAL STANDARD

### A. Habeas Relief

II. "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Salemo v. United States*, 187 F. Supp. 3d 402, 413 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

A federal prisoner may move to vacate, set aside, or correct his sentence on four grounds pursuant to § 2255:

> (1) "that the sentence was imposed in violation of the Constitution or laws of the United States, or [(2)] that the court was without jurisdiction to impose such sentence, or [(3)] that the sentence was in excess of the maximum authorized by law, or [(4)] is otherwise subject to collateral attack."

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (alteration in original) (quoting U.S.C. § 2255(a)). "In ruling on a motion under § 2255, the district court is required to hold a hearing 'unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id*.

A. **Ineffective Assitance**

The Sixth Amendment provides "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668-69, 684-86 (1984). "There is 'a strong presumption that counsel's conduct fell within the wide range of professional assistance.'" *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017) (quoting *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (brackets omitted) (quoting *Strickland*, 466 U.S. at 689)). "To overcome that presumption, a petitioner must establish two elements. First, the petitioner must show that counsel's performance was deficient by demonstrating that the representation 'fell below an objective standard of reasonableness.'" *Weingarten*, 865 F.3d at 52 (quoting *Strickland*, 466 U.S. at 688). "Second, the petitioner must show that counsel's deficient representation was prejudicial to the defense by establishing 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). Trial counsel cannot "be[] ineffective for failing to make a motion that would have been futile." *United States v. Abad*, 514 F.3d 271, 276 (2d Cir. 2008) (per curiam); *accord Williams v. United States*, No. 12 Crim. 726, 2020 WL 1847966, at *8 (S.D.N.Y. Apr. 13, 2020). "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *United States v. Melhuish*, 6 F.4th 380, 393 (2d Cir. 2021). Strategic decisions include whether to attack a witness's credibility, and to what extent. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002); *accord Dede v. United States*, 798 F. Supp. 2d 538, 540 (S.D.N.Y. 2011). A reviewing court may not second-guess a reasonable trial strategy simply because it was unsuccessful. *See Hightower v. United States*, No. 7 Crim. 1111, 2013 WL 3388957, at *2 (S.D.N.Y. July 8, 2013) (citing *Strickland*, 466 U.S. at 689).

**DISCUSSION**

III.  The Petition asserts that defense counsel rendered ineffective assistance by failing to: (1) move to preclude introduction of the videos on the ground that the Government could not adequately authenticate them; (2) move *in limine* to establish the admissibility of the Debriefing Statements by Levin that contradicted the video recordings, as well as not providing adequate notice to the Government regarding introduction of those statements; (3) familiarize himself with certain of McElearney's interview notes, leading to ineffective cross-examination and (4) call four exculpatory witnesses. The Petition does not provide any facts, supported by competent evidence, showing that counsel's representation (1) fell below an objective standard of reasonableness or (2) changed Petitioner's conviction or sentence to a reasonable probability. *Weingarten*, 865 F.3d at 52.

    **A.**    **Failure to Challenge the Authenticity of the Videos**

Petitioner alleges that defense counsel provided ineffective assistance because he did not "move to preclude the Government from introducing inferentially damning videos" that the Government "could not authenticate." According to the Petition, the "sole witness who had entered the clinic and could provide direct testimony about the reliability of the videos was Boris Levin, who died before trial." This argument is unavailing because (1) the Government adequately authenticated the videos through Agent McElearney who directly controlled, managed and created the video recordings and (2) many other pieces of evidence corroborated the fraudulent nature of the physical therapy sessions captured in the videos.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The Second Circuit has "often commented that the bar for authentication of evidence is not particularly high, and proof of authentication may be

6

direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008); *accord We Shall Overcome Found. v. The Richmond Org.*, No. 16 Civ. 2725, 2017 WL 3981311, at *18 (S.D.N.Y. Sept. 8, 2017). "[T]he government is not required to call as a witness a participant in a recorded conversation in order to authenticate the recording; it may lay the foundation for the recording through the testimony of the technician who actually made it. A proper foundation for the [defendant/informant] recording was therefore laid through the testimony of the agent who operated the recording device." *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990); *accord Leo v. Long Island R.R. Co.*, 307 F.R.D. 314, 324 (S.D.N.Y. 2015) ("The admitting party's burden of making a prima facie showing that the item is genuine can be satisfied in several ways, including the testimony of a witness with knowledge or evidence showing that a process or system produces accurate results. For video recordings, like tape recordings, the proponent should also show that the camera functioned properly, the operator was competent in operating the equipment, and the recording accurately represented the scene depicted.") (internal citations omitted).

Trial counsel's failure to object to the videos' authenticity does not render his representation objectively unreasonable under *Strickland*'s first prong, because a large body of evidence showed the videos accurately depicted Levin's clinic visits. First, McElearney laid a foundation for introducing the videos by testifying where, when and how the videos were created, consistent with governing law. Second, other witnesses' testimony established that the videos depicted Levin's visits to Petitioner's clinics. Olga Kharuk, who had worked with Petitioner for almost six years, remembered Levin's appearance and voice and identified him in the videos, as well as herself, Petitioner, and different areas in the clinic. Anastasiia Flora, who had worked in the same clinics as Petitioner for over two years, also identified Petitioner, Levin,

herself and others in the recordings. Another clinic worker, Diana Cabana Rubenstein, also identified a physical therapy area in one of the clinics and one of the patients who appeared in the video recording. This testimony plainly satisfies the Government's burden of showing authenticity. *See, e.g., Leo*, 307 F.R.D. at 324. Petitioner's trial counsel was not "ineffective" for failing to make an argument or objection that stood little chance of success.

In response, Petitioner argues that there was no "informed explanation for the discrepancies in the videos' lengths and substance," and that trial counsel should have claimed the videos had been tampered with. Putting aside that many of these discrepancies were elicited during Petitioner's trial counsel during the cross-examination of McElearney, as Petitioner acknowledges, such cross-examination challenges the weight to be given the video evidence, not the lower threshold of authenticity and admissibility. *See United States v. Sovie*, 122 F.3d 122, 127 (2d Cir. 1997) (holding that allegations of tampering with a recording device went "to the weight of the evidence rather than to its admissibility"); *accord United States v. al Fawwaz*, No. 98 Crim. 1023, 2015 WL 13514090, at *3 (S.D.N.Y. Feb. 9, 2015) (holding that testimony related to tampering with a computer was one of "weight rather than admissibility . . . [t]hat may prove to be a potent issue for the government's case-in-chief, but . . . is not a bar to authentication").

### B. Admissibility of the Debriefing Statements

Petitioner claims that trial counsel was ineffective for failing to (1) move *in limine* to determine whether certain Debriefing Statements, which cast doubt on the weight to be accorded the video evidence, were admissible as party-opponent admissions and (2) give the Government adequate notice that the defense would use the Debriefing Statements -- one of the prerequisites for claiming the statements fell under the residual hearsay exception of Federal Rule of Evidence 807. This argument is unavailing because, as the Court of Appeals held, the Debriefing

8

Statements were properly excluded and in any event their exclusion was not prejudicial as "Behiry has not demonstrated that the testimony at issue would have created reasonable doubt to overcome the evidence against him . . . ." *Behiry*, 2021 WL 6061988, at * 3 (2d Cir. Dec. 20, 2021).

The exclusion of the relevant statements was not prejudicial particularly because they were more inculpatory than exculpatory. They established that Levin received approximately ten minutes of services on two dates, while Petitioner's records for those dates show Levin receiving approximately fifty minutes of services. These statements thus would have provided additional evidence of the crimes Petitioner was charged with, while casting some doubt on the weight to be given the video evidence. *See Greiner v. Wells*, 417 F.3d 305, 324 (2d Cir. 2005) (where the introduction of evidence "would have opened the door to a prosecution line of inquiry harmful to the defense," "[w]e cannot fault [trial counsel] for refusing to introduce [such] evidence . . . .").

C.   **Review of McElearney's Notes**

Petitioner claims that trial counsel failed "to familiarize himself with or share with [Petitioner], notes prepared by Agent McElearney that conflict with his trial testimony . . . ." Specifically, Petitioner points out discrepancies between the times listed in Agent McElearney's notes for Levin's arrival and departure from the clinics for four days in May 2012 and the times announced by Agent McElearney on the recordings for those particular days. The time discrepancies are typically around ten to fifteen minutes. For example, Agent McElearney's notes from May 4, 2012, state that Levin entered the clinic at 9:15 a.m. and exited at 10:44 a.m., while McElearney announces on video that Levin entered at 9:30 a.m. and exited at 10:50 a.m. Petitioner claims his trial counsel failed to exploit, or even identify, such discrepancies, and that cross-examination on these topics would have undermined the jury's assessment of Agent

9

McElearney's competence and credibility. The lack of cross-examination on these discrepancies was within the bounds of sound trial strategy, not objectively unreasonable under *Strickland*'s first prong and not prejudicial under *Strickland*'s second prong.

First, the Government did not introduce or rely on video evidence for the four days where McElearney's notes diverge by ten to fifteen minutes from his video announcements. Reasonable defense counsel could conclude that cross-examination on timing discrepancies of ten to fifteen minutes for videos not shown to the jury was not a productive use of trial time or resources. Instead of attempting to undermine McElearney's reliability as a timekeeper, the trial transcript shows that defense counsel's primary goal was not to call into question the contents of the videos and the allegedly fraudulent physical therapy sessions depicted therein. "Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002); *accord United States v. Blanco*, 811 F. App'x 696, 703 (2d Cir. 2020) (summary order). The Petition does not establish that defense counsel's lack of cross-examination on these timing discrepancies meets *Strickland*'s first prong.

Second, Petitioner alternatively claims that defense counsel was ineffective because he never reviewed these notes in the first instance. This argument is unpersuasive because any failure to review those notes and cross-examine Agent McElearney regarding the time discrepancies therein would have done little to controvert the significant other evidence of guilt in this case, including the content (rather than timing) of the videos, myriad patient records and testimony from numerous fact witnesses with first-hand knowledge of Petitioner's fraudulent activity. Petitioner has not established a "reasonable probability" that any failure of defense counsel to review the notes and question McElearney about timing discrepancies in four videos

not shown to the jury would have produced a different trial outcome under *Strickland*'s second prong.  *Weingarten*, 865 F.3d at 52.

Third, Petitioner's claim that defense counsel was ineffective because he failed to "share" McElearney's notes with Petitioner is meritless.  Defense counsel is not required to share and review each document from discovery and voluminous 3500 material with a defendant in preparation for trial.  *See Blanco*, 811 F. App'x at 702 (summary order) ("[W]e are not aware of any authority requiring defense counsel to review with his client all of the discovery materials that counsel acquires in the course of preparing for trial.").

        **D.**      **Failure to Call Potentially Exculpatory Witnesses**

Petitioner claims that trial counsel provided ineffective assistance by failing to call "seemingly exculpatory witnesses" who worked at the clinics, namely Ramy Ahmed, Mohammed Attya, Ahmed Fekry Mahmoud and Sayed Said.  Petitioner claims a February 21, 2019, letter to defense counsel from the Government stated that each of these witnesses "informed the Government that they were aware of no fraudulent activity at the clinics." Petitioner claims counsel erred by never sharing this letter with him and failing to call these witnesses.  Because counsel's strategic decision not to call these witnesses was not objectively unreasonable and the potential testimony would not have changed the outcome of the trial, Petitioner's claim of ineffective assistance is denied.  *See Greiner*, 417 F.3d at 323 ("Courts applying *Strickland* are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury."); *accord Pierce v. United States*, No. 12 Crim. 340, 2018 WL 4179055, at *10 (S.D.N.Y. Aug. 31, 2018), *report and recommendation adopted*, 2020 WL 2765091 (S.D.N.Y. May 28, 2020).

Petitioner's argument fails under *Strickland*'s first prong because counsel's decision not to call these witnesses was well within the bounds of reasonable trial strategy. Two of the witnesses, Ahmed and Attya, told the Government that they spent between thirty and forty-five minutes conducting initial patient evaluations -- far more than the one to three minutes Petitioner spent on such evaluations. Said told the Government that he "never saw [Petitioner] perform" initial evaluations at all. Record evidence also suggested that these witnesses signed charts for patients they did not see and conducted evaluations that lasted only for a minute or two. Putting these witnesses on the stand, and opening them to questioning on these topics, had the potential to further incriminate Petitioner -- by suggesting that his initial evaluations were far too short, or that he did not perform them at all, and by asking the jury to credit exculpatory witnesses who themselves were vulnerable to attack on their credibility. Defense counsel's decision to avoid bringing such testimony before the jury was a reasonable strategic decision. *See Saco v. Cooksey*, 214 F.3d 270, 275 (2d Cir. 2000) (where "there was a significant potential downside to the introduction of . . . evidence, trial counsel's decision to avoid its admission was objectively reasonable."); *see also Harrington v. Richter*, 562 U.S. 86, 108 (2011) ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.").

Petitioner also fails to show how the contemplated testimony from these witnesses -- that they personally did not witness any fraudulent activity -- would have prejudiced him under *Strickland*'s second prong. None of these witnesses could credibly testify that the contents of the video recordings shown to the jury were false or wrong, or that the clinic employees who corroborated the activities recorded in those videos were lying or incorrect. Petitioner has not

12

established a reasonable probability that the trial outcome would have been different had these witnesses been called by the defense.

### E. Petitioner's Remaining Arguments

Petitioner makes several other arguments that are unavailing. He first takes issue with defense counsel's cross-examination of McElearney, claiming that counsel failed to ask how McElearney knew which specific procedures claimed from Levin's February 24, 2012, visit received Medicare and Medicaid funding. Second, Petitioner claims that defense counsel failed to seek debriefing notes from the days where video recordings were not in evidence due to camera malfunctions. Third, Petitioner claims that counsel "never inquired as to the reason for the absence of video" for Levin's visits on March 6, May 4 and May 18, 2012. Finally, Petitioner argues that his defense counsel should have asserted that a billing record with fraudulent entries was created by someone other than Petitioner.

Petitioner has not established that, but for counsel's alleged failures, the result at trial would have been different. Petitioner again focuses on the hypothetical effects of certain arguments, evidence or lines of questioning in isolation, without taking into account the strategic decisions defense counsel must make, as well as the significant other evidence establishing Petitioner's guilt. *See, e.g.*, *Harrington*, 562 U.S. at 107-08 ("An attorney can avoid activities that appear distractive from more important duties [and is] entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies;" "[a]n attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."). Put differently, had counsel successfully pursued the avenues Petitioner identifies, those efforts still would not have called into question the myriad other evidence of his guilt sufficiently to create a "reasonable probability" of a different

outcome. Trial counsel made decisions that can be "considered sound trial strategy" and "do not constitute ineffective assistance." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005).

   F. **An Evidentiary Hearing Is Unnecessary**

  Petitioner's request for an evidentiary hearing is denied. Courts have broad discretion to grant or deny such a hearing. *See Chang v. United States*, 250 F.3d 79, 85-86 (2d Cir. 2001); *accord Pendergrass v. United States*, No. 16 Civ. 5714, 2019 WL 7333816, at *18 (S.D.N.Y. Oct. 30, 2019), *report and recommendation adopted*, 2019 WL 7293394 (S.D.N.Y. Dec. 30, 2019). An evidentiary hearing is warranted only if it would "offer any reasonable chance of altering its view of the facts." *Chang*, 250 F.3d at 86. As explained above, "the motion and the files and records of the case conclusively show that [Petitioner] is entitled to no relief." 28 U.S.C. § 2255(b). Because no "plausible" claims exist, the Petitioner's request for an evidentiary hearing is also denied. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009).

IV. **CONCLUSION**

  For the reasons stated above, the Petition is denied. Petitioner has not made a substantial showing of a denial of a federal right and appellate review therefore is not warranted. *See Tankleff v. Senkowski*, 135 F.3d 235, 241 (2d Cir. 1998); *Rodriguez v. Scully*, 905 F.2d 24, 24 (2d Cir. 1990). Pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Opinion and Order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The Clerk of Court is respectfully directed to close this case.

Dated: February 11, 2022
   New York, New York

                   LORNA G. SCHOFIELD
                   **UNITED STATES DISTRICT JUDGE**